UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO MIGUEL DEOLIVEIRA,<br><br>Plaintiff,<br><br>v.<br><br>JEFF MACOMBER, *et al.*,<br><br>Defendants. | Case No. 1:23-cv-01022-EPG (PC)<br><br>ORDER TO ASSIGN A DISTRICT JUDGE<br><br>AND<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITHOUT FURTHER LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 9)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Fernando Miguel deOliveira ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. §1983. Plaintiff filed the complaint commencing this action on July 10, 2023. (ECF No. 1). The Court screened Plaintiff's complaint on December 20, 2023 (ECF No. 8), finding no cognizable claims and providing leave to amend. Plaintiff filed a First Amended Complaint (FAC) on January 24, 2024, which is before the Court for screening. (ECF No. 9). Plaintiff generally alleges that he is not receiving adequate healthcare at Central California Women's Facility as a transgender man.

For the following reasons, the Court will recommend that Plaintiff's amended complaint

1

be dismissed without further leave to amend for failure to state a claim.

## I.  SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleading of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

## II.  SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's FAC (ECF No. 9) alleges as follows[1]:

---

[1] Portions of the recitation of Plaintiff's First Amended Complaint have been edited for clarity and punctuation.

2

Plaintiff alleges that the defendants are violating Plaintiff's right to medical and psychological standards of healthcare consistent with the World Professional Association for Transgender Health, the American Psychiatric Association, and World Health Organization.

In 2017, Plaintiff began his transition to the community with healthcare professionals who specialized in gender affirming care. Since October 18, 2021, Plaintiff has been under the guardianship of the County and State California Department of Corrections and Rehabilitation (CDCR) prison. Plaintiff alleges that the medical treatment at California Chowchilla Women's Facility (CCWF) and California Institute for Women (CIW), as well as the county prison Las Colinas Reentry facility in San Diego, California, have failed to provide Plaintiff with adequate treatment for the continuation of his transition, consistent with the standards of specialized care he had in the community. This has caused Plaintiff unnecessary hardships, pain, and emotional distress. Plaintiff states that the government body of medicine has not been consistent with the rights of transgender people, and medical and mental health have not been facilitating Plaintiff's rights and are repeatedly and callously disregarding Plaintiff's complaints. CDCR medical administrators have deprived "the adequate ruled treatments by the courts," all of which are medically necessary for Plaintiff's gender dysphoria, PTSD, anxiety, social anxiety, manic depression, and borderline Bi-Polar, which are legitimate medical conditions constituting Plaintiff's serious medical needs. *Id.* at 4. Plaintiff indicates that physicians at the facilities have no training in trans-inclusive health care.

Plaintiff states that the government body at CCWF and CIW never implemented standards of care consistent with transgender wellness, nor that focus on Health and Safety related to gender-affirming care. Plaintiff alleges that Macomber, De la Cruz, Dr. A. Ola, and J. Elliot with the California Correctional Health Care Services have not provided the necessary treatments nor programs that meet constitutional requirements for patients diagnosed with gender dysphoria. Plaintiff further states that the practices of CCWF and CIS are not consistent with the World Professional Association for Transgender Health's standards of care, nor have they been consistent with the standards of mental health disorders under the DSM-5 of the American Psychiatric Association. Plaintiff states that these facilities have not provided the same specialists that provided care to Plaintiff in the community prior to incarceration. Plaintiff alleges that

3

primary care physicians Dr. Gonzales and Dr. Sviric cannot provide clinical judgments regarding trans inclusive care because they have no experience or specialty in trans-inclusive care. Plaintiff also states that mental health clinicians, Ms. Tassop and Ms. Lee, are not specialized in the DSM-5, nor are they psychologists that can provide Plaintiff with the treatment he began in the community.

Plaintiff states that the healthcare departments at CCWF and CIW do not have "the care guides with fixed protocols consistent to gender affirming care." *Id.* at 6. The Health and Safety Welfare code relating to the legitimate medical condition of gender dysphoria is not implemented nor developed for transgenders. Plaintiff allges that CDCR's Health Care Providers have not followed the standards of care in Plaintiff's transition that began in 2017 with specialists in gender-affirming care provided by Medical at the Family Health Center in San Diego. Plaintiff believes the LGBTQ community has been disregarded. Plaintiff states that he has been deprived of his psychological treatment with a licensed professional in gender dysphoria and has been deprived of treatment for other conditions. Plaintiff states that CCWF and CIW have disregarded Senate Bill 132. Plaintiff states that gender dysphoria cannot be assessed nor diagnosed by a primary care physician, and that mental health clinicians, Ms. Tassop and Ms. Lee, are not certified to treat Plaintiff's diagnosis under the DSM-5.

"Gender-affirming hormone treatment with a third-party endocrinologist, Dr. Kholi, is not [Plaintiff's] primary care physician."[2] *Id.* at 7. Plaintiff states he cannot see Dr. Kholi once a month, and Dr. Kholi cannot have any communication with Dr. Whitcomb, the cardiologist who diagnosed Plaintiff's heart disease in June 2023. Plaintiff indicates that a pathology of the heart disease was not done, which was necessary, because Plaintiff has been on hormone treatment with testosterone under the state's guardianship since October 18, 2021, "and there is proof and true facts that the medical providers have been causing harm, and injuries to [Plaintiff's] health[,] [s]ince they are not specialists in gender affirming care." *Id.*

Plaintiff indicates that when he began his treatment in the community in 2017, he had no heart disease, hypertension, or high cholesterol. However, he was diagnosed with these conditions

---

[2] It is unclear if Plaintiff intended to state that he has undergone or intends to undergo hormone treatment with endocrinologist Dr. Kholi, or to indicate that Dr. Kholi is not his primary care physician.

in June 2022.

Plaintiff states that by law, the endocrinologist must be specialized with at least two or years of experience in trans-inclusive care and must have these qualifications to "provide [Plaintiff] with the safety and welfare relating to gender affirming care." *Id.* at 7-8.

Plaintiff seeks to hold liable the named defendants for punitive damages in this suit, "along with immediate implementations that are to the highest standards of trans-inclusive care." *Id.* at 9.

Plaintiff names as defendants J. Macomber, Secretary of CDCR; de la Cruz, Warden of CCWF; Williams, Warden at CIW; Dr. A. Ola, Chief Medical Executive Officer at CCWF; and J. Elliot, Chief Medical Executive Officer at CIW.

### III. ANALYSIS OF PLAINTIFF'S COMPLAINT

#### A. Section 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979))*; see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which

he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

### B.     Supervisory Liability

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that

6

showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### C. Deliberate Indifference to a Serious Medical Need

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), *overruled on other grounds by WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant subjectively "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. *Farmer*, 511 U.S. at 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Toguchi*, 391 F.3d at 1058. Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of

1:23-cv-01022-JLT-EPG

treatment the doctors chose was medically unacceptable under the circumstances." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiff alleges that all Defendants were deliberately indifferent to his serious medical need for failing to implement sufficient policies and procedures to address his transgender-specific medical needs. For example, Plaintiff alleges that Defendants are violating Plaintiff's right to medical, psychological standards of health care that are consistent with the World Professional Association for Transgender Health, the American Psychiatric Association, and World Health Organization.

In the context of deliberate indifference claims regarding transgender patients, the Ninth Circuit has emphasized that such cases turn on an individual assessment of the need for a specific treatment and the prison official's refusal to provide that treatment. For example, in the case of *Edmo v. Corizon, Inc.,* 935 F.3d 757, 767 (9th Cir. 2019), the Ninth Circuit upheld a district court order requiring the prison to provide plaintiff with Gender Confirmation Surgery based on an individual assessment of the need for specific treatment and the refusal of the prison to provide that treatment, stating:

> Following four months of intensive discovery and a three-day evidentiary hearing, the district court concluded that GCS is medically necessary for Edmo and ordered the State to provide the surgery. Its ruling hinged on findings individual to Edmo's medical condition. The ruling also rested on the finding that Edmo's medical experts testified persuasively that GCS was medically necessary, whereas testimony from the State's medical experts deserved little weight . . . .
>
> Crediting, as we must, the district court's logical, well-supported factual findings, we hold that the responsible prison authorities have been deliberately indifferent to Edmo's gender dysphoria, in violation of the Eighth Amendment. The record before us, as construed by the district court, establishes that Edmo has a serious medical need, that the appropriate medical treatment is GCS [Gender Confirmation Surgery], and that prison authorities have not provided that treatment despite full knowledge of Edmo's ongoing and extreme suffering and medical needs . . . . We also emphasize that the analysis here is individual to Edmo and rests on the record in this case. We do not endeavor to project whether individuals in other cases will meet the threshold to establish an Eighth Amendment violation . . . .

*Id.* at 767. *See also Rosati v. Igbinoso* 791 F.3d 1037, 1039–1040 (9th Cir. 2015) ("Rosati also alleges that the medically accepted treatment for her dysphoria is SRS, supporting that allegation

with copious citations to the World Professional Association for Transgender Health ("WPATH") Standards of Care. Rosati plausibly alleges that prison officials were aware of her medical history and need for treatment, but denied the surgery because of a blanket policy against SRS.") (internal footnotes omitted).

In his complaint, Plaintiff does not identify any specific medical treatment that he requires and is not being provided. He does not, for example, allege that he requires hormone therapy, gender confirmation surgery, or any specific medication that the prison fails to provide. In fact, Plaintiff appears to allege that he receives gender-affirming hormone treatment with a third-party endocrinologist, Dr. Kholi, although that doctor is not Plaintiff's primary care physician.

Instead, Plaintiff's complaint focuses on a general insufficiency of protocols and policies. But the failure to adhere to certain policies does not state a claim for deliberate indifference to a serious medical need.  It does not establish that Plaintiff himself has a medical need for any individual treatment, nor does it establish that any defendant was deliberately indifferent to Plaintiff's own medical need.

Plaintiff does allege that he requires a "pathology of the heart disease." (ECF No. 9, at 7). However, this is not defined and does not appear to refer to a specific treatment, rather than a study of the cause of heart disease.[3] Plaintiff does not allege specific facts indicating that he has a serious medical need for this, whether he requested it from someone, or whether it was denied, and if so, why it was denied. Plaintiff's allegations are thus insufficient to establish deliberate indifference to a serious medical need as to any defendant.

## IV.    CONCLUSION AND ORDER

The Court recommends that this action be dismissed, without granting Plaintiff further leave to amend. In the Court's prior screening order, the Court identified the deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint. Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order but failed to cure the deficiencies identified by the Court.

---

[3] According to The Free Dictionary, "pathology" is defined as "the branch of medicine treating of the essential nature of disease, especially of the changes in body tissues and organs that cause or are caused by disease." https://medical-dictionary.thefreedictionary.com/pathology (last visited Aug. 19, 2024).

Thus, it appears that further leave to amend would be futile.

Accordingly, it is ordered that the Clerk of Court direct a District Judge to this case.

Further, **IT IS RECOMMENDED** as follows:

1. This action be dismissed with prejudice for failure to state any cognizable claims.
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 19, 2024**                                    /s/ Erica P. Grosjean
                                                              UNITED STATES MAGISTRATE JUDGE